## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TOMMY BADEAUX AND CANDIS** | * | CIVIL ACTION NO. 19-cv-566 |
| **LAMBERT, individually and o/b/o NEW** | * | |
| **ORLEANS SAINTS SEASON TICKET** | * | |
| **HOLDERS, NEW ORLEANS SAINTS** | * | SECTION E, DIVISION 5 |
| **NATIONAL FAN BASE a/k/a THE WHO** | * | |
| **DAT NATION, ANY PARTY WITH** | * | |
| **INTEREST THAT HAS BEEN AFFECTED** | * | JUDGE SUSIE MORGAN |
| **BY THE OUTCOME,** | * | |
| | * | |
| Plaintiffs, | * | MAGISTRATE JUDGE MICHAEL |
| | * | NORTH |
| versus | * | |
| | * | |
| **ROGER GOODELL as COMMISSIONER** | * | |
| **OF THE NATIONAL FOOTBALL** | * | |
| **LEAGUE, NATIONAL FOOTBALL LEAGUE** | * | |
| **And NFL PROPERTIES, LLC, Successor-in-** | * | |
| **Interest to NFL PROPERTIES, INC.** | * | |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## NFL DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION TO REMAND

The NFL Defendants—the National Football League ("NFL"), NFL Properties LLC ("NFL Properties"), and Roger Goodell as Commissioner of the NFL ("the Commissioner"; collectively with the NFL and NFL Properties, "the NFL Defendants")—provide this memorandum opposing Plaintiffs' Motion to Remand (R. Doc. 24). This Court's removal jurisdiction is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). The Plaintiffs are bound by the allegations of their Petition as filed in state court, and that Petition, filed in Civil District Court for the Parish of Orleans, State of Louisiana, served on the Commissioner on January 22, 2019, and titled "Petition for Writ of Mandamus" (herein, "the Petition") unequivocally brings claims for damages on behalf of a class of New Orleans Saints season

ticketholders, the New Orleans Saints national fan base, and all others "with interest that has been affected by the outcome [of the NFC Championship Game]." The Petition also presents a matter in controversy with a sum or value greater than $5 million. Finally, there can be no dispute that the parties here satisfy CAFA's requirement of minimal diversity of citizenship. For these reasons, the NFL Defendants request that this Court deny Plaintiffs' Motion to Remand.

Additionally, for the reasons detailed in the NFL Defendants' Notice of Removal, Supplement to Notice of Removal, January 27 Brief, and January 28 Post-Hearing Brief,[1] the NFL Defendants request that this Court dismiss Plaintiffs' suit, with prejudice, and at Plaintiffs' costs.

## I.     The Plaintiffs' Original Petition Governs.

As Plaintiffs concede, "[t]o determine whether the Court has jurisdiction, the Court considers the claims in the state court petition as they existed at the time of removal."[2] Nevertheless, Plaintiffs suggest that, to avoid the CAFA requirements for a class action and for the amount-in-controversy threshold, they "will stipulate that they are not seeking damages in this mandamus action."[3] But that is unavailing to them. First, the Fifth Circuit has held that CAFA "defines class action as any civil action *filed* under Rule 23 or a state class action statute. Thus, *federal jurisdiction under the statutory provision of CAFA is explicitly concerned with the status of an action when filed*—not how it subsequently evolves." *La. v. Am. Nat. Property Cas. Co.*, 746 F.3d 633, 639 (5th Cir. 2014) (internal citations omitted). Second, it is a fundamental standard of law that, in determining the amount-in-controversy for removal jurisdiction purposes, "post-removal affidavits, stipulations, and amendments reducing the amount do not deprive the district court of jurisdiction." *Broussard v. GEICO Cas. Co.*, 2019 WL 181343, *1 (E.D. La. 1/11/2019)

---

[1] R. Docs. 1, 6, 17, 19.
[2] Memo in Supp. of Motion to Remand, at 2.
[3] *Id.* at 5.

(citing *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000)).[4] As discussed below, the Petition as it existed when filed and at the time of removal clearly alleges a class action for damages in excess of $5 million.

## II.   This Court Has Jurisdiction Under CAFA.

CAFA provides a basis for federal courts' original jurisdiction when a Plaintiff's suit is a "civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2). The Plaintiffs' Petition meets each of these requirements.

### A.   Plaintiffs' Petition is a CAFA Class Action.

First, the Petition unequivocally is a CAFA "class action." *See* 28 U.S.C. § 1332(d)(1)(B) (defining "class action" to mean "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action").

In both the preamble paragraph to the Petition and in the Petition's Prayer for Relief, as well as in the Petition's caption, Mr. Badeaux and Ms. Lambert allege that they are bringing the action in a representative capacity, both "individually ***and on behalf of*** New Orleans Saints Season Ticket Holders, New Orleans Saints National Fan Base a/k/a The Who Dat Nation and any party

---

[4] During the hearing conducted in this matter on January 28, 2019, Plaintiffs referred this Court to a recent decision by Judge Feldman allowing a Plaintiffs' stipulation regarding the amount-in-controversy to be considered; the recent series of decisions issued by Judge Feldman that Plaintiffs referred to, however, specifically concerned "a binding ***pre-removal*** stipulation" that was "filed ***with their petition***." *See Jackson v. Denka Performance Elastomer LLC*, 2018 WL 5004807, *2 (E.D. La. 10/15/2018) (emphasis added). Here, the only "stipulations" filed with the Petition were the Plaintiffs' sworn Verifications, both of which referred explicitly to their Petition as being "for Writ of Mandamus and/or ***Class Action Damages***." R. Doc. 1-1, at 7, 8 (emphasis added).

with interest that has been affected by the outcome."[5] Moreover, when verifying the allegations of the Petition in their sworn Verifications, both Mr. Badeaux and Ms. Lambert verified the allegations of the "Petition for Writ of Mandamus ***and/or Class Action Damages***."[6] On the face of the Petition, therefore, it was Plaintiffs' sworn intent to bring their claims as a class and in a representative capacity.

In determining whether an action is a "class action" subject to CAFA, courts do not look to the label applied to the action by a plaintiff but to the substance of what the plaintiffs seek to effect. *See La. ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 424 (5th Cir. 2008) ("It is true that the words 'class action' or 'mass action' do not appear in Louisiana's complaint. However, that does not end our inquiry. It is well-established that in determining whether there is jurisdiction, federal courts look to the substance of the action and not only at the labels that the parties may attach.") (citing *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990), *abrogated on other grounds*, *Miss. Ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 176 (2014). Further, the determination of whether an action is a "class action" for CAFA purposes does not depend on whether the analogous state-law class action statute is expressly invoked. *Id.*; *see also Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 899 (8th Cir. 2017) (holding that CAFA applied to a suit brought in a representative capacity even though the complaint did not expressly reference a state's class action statute but only a state's substantive statute that did not otherwise provide for suits in a representative capacity: "If we interpreted 'any civil action filed under Rule 23' or a state-law analogue to refer only to cases that specifically mention Rule 23 or a state-law analogue…, a

---

[5] Petition, at 1, 4 (R. Doc. 1-1, at 2, 5) (emphasis added).
[6] Petition Verifications (R. Doc. 1-1, at 7, 8) (emphasis added).

plaintiff could avoid federal jurisdiction for a lawsuit that resembles a class action in all respects simply by omitting from the complaint the name of the rule or statute under which she proceeds.").

Mr. Badeaux and Ms. Lambert could only purport to bring their claims in a representative capacity in Louisiana court, as reflected multiple times in the Petition and in their Verifications, pursuant to the state analogue to Fed. R. Civ. P. 23, Louisiana Code of Civil Procedure articles 591, *et seq. See, e.g.*, La. C.C.P. art. 592(A) (establishing as the only prerequisite to moving for certification of a class the filing of an "initial pleading demanding relief ***on behalf of*** or against a class") (emphasis added). Neither the Louisiana mandamus statute nor any other statute applicable to the claims pled by Plaintiffs provide an alternative path for bringing their claims in the representative capacity they seek.

### B. Plaintiffs and Defendants Comprise CAFA's Required Minimal Diversity of Citizenship.

Plaintiffs suggest in their Motion to Remand that the Notice of Removal fails to show "complete diversity at the time of removal."[7] Unlike the complete diversity requirement of 28 U.S.C. § 1332(a), the diversity of citizenship requirement in CAFA only requires that at least one Plaintiff be a citizen of a different state from at least one Defendant. 28 U.S.C. § 1332(d)(2)(A); *see also Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569 (5th Cir. 2011). Additionally, for CAFA purposes only, the citizenship of unincorporated associations will be deemed to be only those states where they have their principal place of business and under whose laws they are organized. 28 U.S.C. § 1332(d)(10).

During the January 28, 2019 hearing in this matter, Plaintiffs conceded that named Plaintiffs Mr. Badeaux and Ms. Lambert are domiciliaries and citizens of the State of Louisiana.

---

[7] R. Doc. 24, at 1.

Defendant NFL Properties LLC is a Delaware Limited Liability Company with its principal place of business in New York City.[8] The NFL is an unincorporated association comprised of 32 separately owned and independently operated NFL Member Clubs, with its principal place of business in New York City, as well.[9] The Commissioner also is domiciled in and a citizen of New York.[10] Accordingly, because the NFL Defendants are all citizens of New York (and, additionally as to NFL Properties LLC, Delaware), while Mr. Badeaux and Ms. Lambert are citizens of Louisiana, CAFA's requirement of minimal diversity is met.

### C. Plaintiffs' Petition Meets CAFA's $5 Million Amount-In-Controversy Threshold.

The final element for CAFA jurisdiction is that "the matter in controversy" alleged in the Petition "exceeds the sum or value of $5,000,000[.]" 28 U.S.C. § 1332(d)(2). "The required demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether the plaintiff is likely to win or be awarded everything he seeks." *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015) (internal quotation marks omitted).

> Where, as here, the case is removed from a state jurisdiction that does not require the plaintiff to specifically plead the amount in controversy, the defendant may satisfy this burden by demonstrating that it is 'facially apparent' from the petition that the claims are above the jurisdictional amount. Under these circumstances, the defendant need not prove the jurisdictional amount to a legal certainty. It is enough that the defendant demonstrates that the plaintiff's claim 'more likely than not' meets the jurisdictional requirement.

---

[8] *See* R. Doc. 1, at ¶ 7; *see also* Citation for Service (R. Doc. 1-1, at 11) (identifying the address of the NFL's "corporate offices").

[9] *See* R. Doc. 1, at ¶ 7; *see also Clarett v. NFL*, 306 F. Supp. 2d 379, 383 (S.D.N.Y. 2004).

[10] The NFL Defendants did not allege the Commissioner's citizenship in the initial Notice of Removal, since the diversity of any one Defendant from any one Plaintiff is sufficient to establish CAFA's minimal diversity. However, during conference in chambers on the evening of January 28, 2019, this Court granted Defendants leave to file a Supplement to the Notice of Removal containing the citizenship allegations for the Commissioner, as well. *See* R. Doc. 19, at ¶ 7a; *see also* R. Doc. 21.

*JMCB, LLC v. Bd. of Commerce & Indus.*, 293 F. Supp. 3d 580, 587 (M.D. La. 2017) (internal citations and quotation marks omitted). "If it is not apparent from the face of the complaint, then the court may rely on summary judgment type evidence to ascertain the amount in controversy." *Royal Alice Properties, LLC v. Atkins*, 2013 WL 4434951, *4 (E.D. La. 8/14/2013). "[T]hat the removing party bears the burden of proving the amount in controversy does not mean that the removing party cannot ask the court to make common-sense inferences about the amount put at stake by the injuries the plaintiffs claim." *Robertson*, 814 F.3d at 240.

As with the existence of a "class action," the Plaintiffs' Petition establishes that the controversy pled *in the Petition* meets the amount-in-controversy requirement of CAFA. Plaintiffs' Verifications confirm that their Petition is, in part, a Petition "for Class Action Damages."[11] The various categories of damages and remedies set forth in Plaintiffs' Petition each independently support that the CAFA amount-in-controversy threshold is exceeded. The first category consists of Plaintiffs' allegation of "monetary loss for ticket holders, who purchased tickets with the presumption of integrity and fairness[.]" Petition, ¶ 8. As NFL Executive Vice President and Chief Financial Officer Joseph Siclare attested, "The average ticket price to attend the 2019 National Football Conference Championship Game in New Orleans, Louisiana, on January 20, 2019, was approximately $230," with more than 72,000 ticketholders attending the game.[12] Notably, Plaintiffs do not dispute this $230 per ticketholder measure of the amount in controversy, but merely rely on their post-removal assertion that a class action was not pled, arguing that the amount-in-controversy from this item of damages could only be $460.[13] However, as discussed above, the Petition plainly states that it is brought by the named Plaintiffs not just

---

[11] R. Doc. 1-1, at 7, 8.
[12] Affidavit of Joseph Siclare (Jan. 25, 2019), at ¶ 2 (R. Doc. 1-2, at 3).
[13] R. Doc. 24-1, at 7.

"individually," but also "on behalf of," among others, "New Orleans Saints Season Ticket Holders." Accordingly, just this one category of damages for "monetary loss for ticket holders," alleged on the face of the Petition, is more than $16.5 million, more than three times the CAFA threshold. The Court need look no further to examine the CAFA amount-in-controversy.

In addition to this category of damages, Plaintiffs categorize six other types of compensable injuries they claim to have suffered: "[p]ast, present and future mental anguish and emotional trauma"; "[p]ast, present and future loss of faith in the National Football League"; "[p]ast, [p]resent and future loss of enjoyment of life"; "[p]resent and future loss of entertainment"; "[d]istrust of the game which has become the National pastime"; and "[o]ther damages itemized at the trial of this matter." Petition, ¶ 11(a)-(g). While the class of "New Orleans Saints National Fan Base a/k/a The Who Dat Nation" may be difficult to ascertain, just one change.org petition promoting exactly the same relief sought in Plaintiffs' lawsuit—a common-sense barometer of how many people may be in the "Who Dat Nation," at least as to this particular issue—contained 760,569 signatures.[14] If that number is indicative of the "Who Dat Nation" class, then the six categories of damages would need to only average $6.57 per person to reach CAFA's $5 million threshold.[15]

Finally, in the first paragraph of the Petition's Prayer for Relief, Plaintiffs request "interest thereon"—which wholly undermines any post-removal representation that they have not been seeking damages; there could not be an award of interest without principal.[16] In a second paragraph

---

[14]   https://www.change.org/p/we-want-an-nfc-championship-rematch-sunday-jan-27-after-refs-missed-call.

[15] Admittedly, taking the Plaintiffs' allegations and applying logic and common sense as directed by *Robertson* devolves into something that feels absurd, but as noted above the required demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether the plaintiffs are likely to win or be awarded everything they seek, and allows for this Court's application of "common sense." *Robertson*, 814 F.3d at 240.

[16] Petition Prayer for Relief, R. Doc. 1-1, at 5.

in the Petition's Prayer for Relief, following their request for judgment on their claims "together with interest thereon," Plaintiffs "further prays" [sic] for mandamus relief.[17] Plaintiffs could not separately and "further" pray for a writ of mandamus were they not also praying for something else; here, a monetary judgment with interest thereon.

Independently, the value of the mandamus relief sought by Plaintiffs in their Petition, the rescheduling of the NFC Championship game or some portion thereof,[18] is well in excess of CAFA's $5 million threshold, based on the costs associated with organizing and re-playing all or a portion of the NFC Championship Game and the delays this would necessarily cause in conducting Super Bowl LIII. *See* Affidavit of Joseph Siclare, at ¶ 3; *see also Royal Alice Properties*, 2013 WL 4434951 at *4 (calculating the value of the requested mandamus relief for purposes of jurisdictional amount-in-controversy); *Hamp's Constr., LLC v. Tag-Miss. Enters., LLC*, 2009 WL 2356671, *2-3 (E.D. La. 7/27/2009) (valuing damages and requested injunctive relief separately for determining amount in controversy); *Cheek v. Horton*, 2008 WL 3500369, *2 (E.D. La. 8/11/2008) ("According to the Supreme Court, in cases seeking equitable relief, such as an accounting, it is well established that the amount in controversy is measured by the value of the object of the litigation.") (internal quotation marks and citations omitted); *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 634 (8th Cir. 2017) (considering the value of "unspecified injunctive relief" in determining the amount in controversy).[19] Thus, entirely independent of the damages

---

[17] *Id.*

[18] Plaintiffs seek "a writ of mandamus be ordered by th[e] Court[,]" Petition at 4 (Prayer for Relief), presumably to direct Mr. Goodell as Commissioner of the NFL to reverse the Game's result or to reschedule the Game either from its "'beginning or from the point at which the extraordinary act occurred.'" Petition, ¶ 4 (quoting NFL Rule 17, § 2, Art. 3).

[19] Plaintiffs also seek the further catch-all category of "all general and equitable relief." Petition, Prayer for Relief.

claims sought by Plaintiffs, the value of the requested mandamus relief renders it facially apparent from the Petition that the total amount-in-controversy exceeds CAFA's $5 million threshold.[20] And when combined with all of the relief sought by Plaintiffs, it eclipses that threshold by several multiples.[21]

As to the value of the mandamus relief sought by Plaintiffs in their original Petition, they argue that the "plaintiff's viewpoint" should control.[22] First, after arguing that, they then offer ***no*** competing viewpoint as to value of the relief they seek. Their argument that the ticketholder damages are only $460 is actually not a countervailing viewpoint on the amount-in-controversy, as it concedes the $230-per-ticketholder amount but only rests on the mistaken belief that the remainder of the class should not be included in the calculation. And as to the value of mandamus relief, they actually have confirmed post-removal that the value of the mandamus relief is—as attested by Mr. Siclare—the costs in delaying the Super Bowl, when they argued in their July 28 Brief that the "opportunity to exercise this right [to participate in a pool for Super Bowl tickets] will be lost forever ***if the Super Bowl is played as currently scheduled*** between the Rams and the Patriots on Sunday, February 3, 2019."[23] As the Fifth Circuit has held, whether to apply the plaintiff-viewpoint rule is not a question that needs to be answered where the facts of a case show that "it does not matter from which viewpoint the amount in controversy is viewed." *Garcia v.*

---

[20] Plaintiffs mistakenly assert that the NFL Defendants argue that the value of the requested mandamus relief is the full $100 million investment in conducting Super Bowl LIII. Instead, Defendants have only argued, and Mr. Siclare's affidavit supports, that the costs of delaying such an extensive undertaking is in excess of $5 million.

[21] Furthermore, Plaintiffs' Petition does not fit within either of the exceptions to CAFA jurisdiction at 28 U.S.C. §§ 1332(d)(3) or (4). Both of them require that a defendant be "a citizen of the State in which the action was originally filed," in addition to meeting other requirements. Under the citizenship definition applicable under 28 U.S.C. § 1332(d)(10), none of the NFL Defendants are in-state Defendants, so neither of these exceptions to CAFA will apply.

[22] R. Doc. 24-1, at 5-6.

[23] R. Doc. 11, at 11 (emphasis added).

*Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 639 (5th Cir. 2003). This is just such a case, where "viewpoint" does not change the correct amount-in-controversy analysis. "Plaintiff viewpoint" does not allow Plaintiffs to make a post-removal attempt to reduce the amount in controversy.

Second, all of the cases cited by Plaintiffs for the plaintiff-viewpoint rule are ***injunction*** cases, not mandamus cases, and Plaintiffs' counsel very unequivocally disclaimed during the January 28 hearing that Plaintiffs were seeking injunctive relief. The only mandamus-relief case cited to the court is *Royal Alice Properties, LLC v. Atkins*, 2013 WL 4434951, \*4 (E.D. La. 8/14/2013). In that matter, the party determined by the court to be the real defendant party in interest, Jones film, put forth evidence of what the value of the requested mandamus relief in that case would be to it; and based on the defendant's evidence of the value of the mandamus relief the court denied the plaintiffs' motion for remand. *Id.* Regardless, here—both because the amount-in-controversy as to the ticketholders' "monetary loss" in the Petition is objectively calculable based on a per-ticketholder amount conceded by Plaintiffs themselves, and because the Plaintiffs actually provide no separate "viewpoint" as to the value of the mandamus relief as pled in the Petition— this Court may exercise its authority under *Robertson*, 814 F.3d at 240, to "make common-sense inferences about the amount put at stake by the injuries the plaintiffs claim" and to find the amount-in-controversy met here.

## III.   Conclusion

For these  reasons, as well as those detailed in the NFL Defendants' Notice of Removal, Supplement to Notice of Removal, January 27 Brief, and January 28 Post-Hearing Brief,[24] the NFL Defendants request that this Court deny Plaintiffs' Motion to Remand, and further, dismiss Plaintiffs' suit, with prejudice, and at Plaintiffs' costs.

---

[24] R. Docs. 1, 6, 17, 19.

–11–

Respectfully submitted,

*/s/ H.S. Bartlett III*
Gladstone N. Jones, III (La. Bar No. 22221)
H.S. Bartlett III (La. Bar No. 26795)
Lynn E. Swanson (La. Bar No. 22650)
Peter N. Freiberg (La. Bar No. 22912)
Jones, Swanson, Huddell & Garrison, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508
**Attorneys for the NFL Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above pleading was served on counsel of record by filing in this Court's CM/ECF System, on this date, the 30th day of January, 2019.

*H.S. Bartlett III*
H.S. Bartlett III