UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TOMMY BADEAUX, ET AL.,<br>    Plaintiffs | CIVIL DOCKET |
| VERSUS | NO. 19-566 |
| ROGER GOODELL, ET AL.,<br>    Defendants | SECTION: "E"(5) |

### ORDER AND REASONS

This case arises out of the events in the final two minutes of the National Football Conference championship game between the New Orleans Saints and the Los Angeles Rams, held in New Orleans, Louisiana on January 20, 2019.[1] Plaintiffs allege that Los Angeles Rams cornerback, Nickell Ribey-Coleman, made improper helmet-to-helmet contact with New Orleans Saints wide receiver, Tommylee Lewis, and improperly interfered with his ability to catch a pass.[2] Plaintiffs allege, and it is undisputed, the officials at the game did not call either a pass-interference or a helmet-to-helmet contact penalty.[3]

On January 22, 2019, Plaintiffs filed suit in the Civil District Court of Orleans Parish, Louisiana.[4] The Plaintiffs name as Defendants Roger Goodell, the National Football League ("the NFL"), and NFL Properties, LLC.[5] Defendants filed a Notice of Removal on January 25, 2019, invoking this Court's jurisdiction under the Class Action Fairness Act ("CAFA").[6] On January 28, 2019, the Court held a hearing regarding its jurisdiction and Plaintiffs' right to a writ of mandamus under Louisiana law. Before and

---

[1] R. Doc. 1-1 at 2-3, ¶2.
[2] *Id.* at 2-4, ¶¶ 2, 7.
[3] *Id.* at 3-4, ¶ 7.
[4] *Id.* at 2-5.
[5] *Id.* at 2, ¶ 1.
[6] R. Doc. 1; 28 U.S.C. § 1332(d).

1

after the hearing, the parties submitted briefing regarding this Court's jurisdiction and Plaintiff's right to a writ of mandamus.[7] On January 29, 2019, Plaintiffs filed a Motion to Remand.[8] Defendants oppose the Motion to Remand.[9]

## I. The Court Has Jurisdiction Under CAFA

CAFA provides federal subject matter jurisdiction over a "class action" in which plaintiff class members number at least 100, at least one plaintiff class member is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5,000,000.[10]

### A. The Plaintiffs Filed a Class Action in State Court

The initial inquiry must be whether Plaintiffs filed a class action in state court. The Plaintiffs claim they did not.[11] The two named Plaintiffs claim they filed an individual action requesting a writ of mandamus and that jurisdiction must be evaluated on that basis.[12]

CAFA defines a "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."[13] Louisiana Code of Civil Procedure articles 591-597 outline the requirements for a class action under Louisiana law. Those articles "essentially adopt current federal law regulating class actions" under Rule 23 of the Federal Rules of Civil Procedure. To the extent the Louisiana

---

[7] R. Docs. 6, 11, 17, 18.
[8] R. Doc. 24.
[9] R. Doc. 28.
[10] 28 U.S.C. § 1332(d).
[11] R. Doc. 11 at 5; R. Doc. 24-1 at 3.
[12] R. Doc. 24 at 2. In a separate conclusion paragraph of the petition, Plaintiffs further "prays [sic] that a writ of mandamus be ordered." R. Doc. 1-1 at 5.
[13] 1332(d)(1)(B).

code articles parallel Rule 23, "the analysis of Louisiana's class certification is appropriately informed by federal jurisprudence interpreting Federal Rule 23."[14]

Although Plaintiffs' state court petition is captioned "Petition for Writ of Mandamus," the label is not determinative.[15] It is well established that, "in determining whether there is jurisdiction, federal courts look to the substance of the action and not only at the labels that the parties may attach."[16] In enacting CAFA, Congress expressed concern about "jurisdictional gamesmanship" designed to keep class actions out of federal court and emphasized that "class action" should be interpreted liberally.[17] Congress explained:

> the overall intent of these provisions is to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications. In that regard, . . . the definition of "class action" is to be interpreted liberally. Its application should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff or the state rulemaking authority. Generally speaking, lawsuits that resemble a purported class action should be considered class action for the purpose of applying these provisions.[18]

A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words "class action" or does not include the state rule or statute under which it proceeds as a class action.[19]

Clearly, the claims in Plaintiffs' state court petition are asserted by the named Plaintiffs individually and on behalf of others. The caption of the petition lists Plaintiffs

---

[14] *Doe v. S. Gyms, LLC*, 2012-1566, p. 6 (La. 3/19/13); 112 So. 3d 822, 828.
[15] Senate Report No. 109-14, at 35 (2005).
[16] *Louisiana v. Allstate Ins. Co.*, 536 F.3d 418, 424 (5th Cir. 2008) (citing *Grassi v. Ciba-Giegy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990)).
[17] Senate Report No. 109-14, at 10 (2005); *see also Williams v. Emp'rs Mut. Cas. Co*, 845 F.3d 891, 901 (8th Cir. 2017); *Louisiana v. Allstate Ins. Co.*, 536 F.3d at 424.
[18] Senate Report No. 109-14, at 35 (2005).
[19] *Williams*, 845 F.3d at 901 ("If we interpreted 'any civil action filed under Rule 23' or a state-law analogue to refer only to cases that specifically mention Rule 23 or a state-law analogue, as Williams proposes, a plaintiff could avoid federal jurisdiction for a lawsuit that resembles a class action in all respects simply by omitting from the complaint the name of the rule or statute under which she proceeds.").

as "Tommy Badeaux and Candis Lambert, individually and on behalf of New Orleans Saints Season Ticket Holders, New Orleans Saints National Fan Base a/k/a The Who Dat Nation and any party with interest that has been affected by the outcome."[20] The introductory paragraph of the petition states it is "[t]he petition of Tommy Badeaux and Candis Lambert, individually and on behalf of New Orleans Saints Season Ticket Holders, New Orleans Saints National Fan Base a/k/a The Who Dat Nation and any party with interest that has been affected by the outcome."[21] In the first paragraph of the prayer of the petition, "Petitioners, Tommy Badeaux and Candis Lambert, individually and on behalf of New Orleans Saints Season Ticket Holders, New Orleans Saints National Fan Base a/k/a The Who Dat Nation and any party with interest that has been affected by the outcome, pray that this petition be served upon defendants" and request "after due proceedings" that there be judgment in their favor, "granting plaintiffs' claims against defendants . . . together with interest thereon and for all costs of these proceedings, and for all general and equitable relief."[22]

Plaintiffs allege the incident at issue was caused by the negligence of Defendants Goodell and the NFL. Specifically, paragraph nine of the petition alleges:

> The said incident was proximately caused by the negligence of the defendant, Roger Goodell and the National Football League, in the following non-exclusive respects:
> (a) Failure to maintain proper lookout;
> (b) Failure to properly call penalties and infractions during game play;
> (c) Failure to review plays to correct field oversight after the fact;
> (d) Failure to exercise the rights afforded to the commissioner to correct extraordinary unfair actions;
> (e) Failure to enforce the rules of the game;
> (f) Failure to properly train and supervise referees;
> (g) Any other act of negligence shown at the trial of this matter.[23]

---

[20] R. Doc. 1-1 at 2.
[21] *Id.* at 2, 5.
[22] *Id.* at 5.
[23] *Id.* at 4, ¶ 9.

4

The petition itemizes various categories of damages for which Plaintiffs seek relief based on the Defendants' negligence, including:

(a) Past present, and future mental anguish and emotional trauma;
(b) Past present, and future loss of faith in the NFL;
(c) Past present, and future loss of enjoyment of life;
(d) Present and future loss of entertainment;
(e) Distrust of the game which has become a national pastime;
(g) [sic] Other damages itemized at the trial of this matter.[24]

In the first paragraph of their prayer for relief, Plaintiffs requested "judgment in Plaintiffs' favor, granting plaintiffs' claims against defendants . . . together with interest thereon." The enumeration of the acts of negligence and the damages resulting from that negligence, including a request for a judgment with interest, is appropriate only in the context of a negligence cause of action for damages, not an action for a writ of mandamus. Plaintiffs included a second, separate paragraph in their prayer for relief, in which they "further prays [sic] that a writ of mandamus be ordered."[25] The fact that Plaintiffs prayed first for a judgment with interest and second, or *further*, for a writ of mandamus discredits their assertion that they sought to bring only a mandamus action.

Plaintiffs' state court petition unmistakably resembles a class action despite its omission of the words "class action" or reference to Louisiana Code of Civil Procedure article 591, *et seq*. Plaintiffs bring claims "individually and on behalf of New Orleans Saints Season Ticket Holders, New Orleans Saints National Fan Base a/k/a The Who Dat Nation and any party with interest that has been affected by the outcome."[26] Plaintiffs are not parents, guardians, trustees, or executors of the New Orleans Saints season ticketholders or the members of the Who Dat Nation; they are not legal representatives

---

[24] *Id.* at 5, ¶ 11.
[25] *Id.* at 5.
[26] *Id.*

5

of the members of the purported class by virtue of any law. The only right the Plaintiffs possibly have for bringing claims on behalf of New Orleans Saints season ticketholders and members of the Who Dat Nation derives from Louisiana Code of Civil Procedure article 591, *et seq*. The court finds Plaintiffs' have brought a class action.

*After* Defendants removed the case, Plaintiffs attached to their memorandum regarding subject matter jurisdiction an affidavit signed by Plaintiff Tommy Badeaux in which he affirms that he does not seek to certify a class action.[27] Plaintiffs contend this affidavit demonstrates that Plaintiffs did not bring a class action under state law and, as a result, this court has no jurisdiction under CAFA.[28] CAFA jurisdiction is determined by the facts as they existed at the time of removal, not by subsequent events.[29] Once a court has diversity subject matter jurisdiction under CAFA, post-removal affidavits will not deprive the Court of jurisdiction.[30] As a result, the affidavit has no bearing on the Court's determination of its jurisdiction. As the Fifth Circuit has recognized, "removal based on diversity of citizenship is a right conferred by Congress, the need for which 'may well be greatest when the plaintiff tires hardest to defeat it.'" [31] Plaintiffs' "jurisdictional

---

[27] R. Doc. 11-1 at 2. The affidavit also states that Plaintiff does not request monetary damages.
[28] R. Doc. 11.
[29] *Louisiana v. Am. Nat. Prop. Cas. Co.*, 746 F.3d 633, 635 (5th Cir. 2014); *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000); *see also Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 390 (1998) ("[F]or purposes of removal jurisdiction, we are to look at the case as of the time it was filed in state court—prior to the time the defendants filed their answer in federal court."); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938) ("[T]he status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal, since the defendant must file his petition before the time for answer or forever lose his right to remove.").
[30] *Standard Fire Ins. Co v. Knowles*, 568 U.S. 588 (2013) (finding post-removal affidavit stipulating that plaintiff would not seek damages for the class in excess of $5 million did not deprive the court of jurisdiction under CAFA). To the extent the Plaintiffs argue the affidavit functions as a voluntary dismissal of Plaintiffs' class action claims, the withdrawal of class allegations or severance of a class action into individual actions does not change the jurisdictional analysis because the action was *filed* as a class action. *Louisiana v. Am. Nat. Prop. Cas. Co.*, 746 F.3d at 639.
[31] *Grassi*, 894 F.2d at 185 (citing AMERICAN LAW INSTITUTE, STUDY OF THE DIVISION OF JURISDICTION BETWEEN STATE AND FEDERAL COURTS, Official Draft, at 169 (1969)).

gamesmanship" in submitting the post-removal affidavit signed by Plaintiff Tommy Badeaux is to no avail.

Plaintiffs' state court petition, asserting causes of action by the individual Plaintiffs and on behalf of others, clearly is a class action. Accordingly, the Court will examine whether it has jurisdiction under CAFA.

### B. Over One Hundred Plaintiffs

For this court to exercise diversity subject matter jurisdiction under CAFA, the plaintiff class members must number at least one hundred.[32] Plaintiffs bring suit in an individual capacity and on behalf of "New Orleans Saints Season Ticket Holders, New Orleans Saints National Fan Base a/k/a The Who Dat Nation and any party with interest that has been affected by the outcome."[33] Although this Court does not have evidence of the number of New Orleans Saints season ticketholders, Plaintiffs do not contest that there are at least one hundred Saints season ticketholders.[34] It is reasonable for the Court to infer that the number of class members exceeds one hundred.[35] As a result, the Court finds the plaintiff class members number at least one hundred persons.

### C. Minimal Diversity

CAFA requires minimal diversity in that it requires any member of the class of plaintiffs to be diverse from any defendant.[36] Plaintiffs Tommy Badeaux and Candis Lambert are domiciled in Louisiana.[37] Defendants state in their Amended Notice of Removal that Defendant Roger Goodell is domiciled in the state of New York.[38] Plaintiffs

---

[32] 28 U.S.C. § 1332(d).
[33] R. Doc. 1-1 at 2, 5.
[34] R. Docs. 11, 18, 24, 27.
[35] *See Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 818 (5th Cir. 2007).
[36] 28 U.S.C. § 1332(d).
[37] R. Doc. 1 at 3; R. Doc. 27 at 5.
[38] R. Doc. 19.

argue Defendants did not properly allege the citizenship of Defendant Goodell in their original Notice of Removal and, as a result, the Court may not consider the allegations in the amended Notice of Removal to determine the citizenship of Defendant Goodell.[39] Diversity jurisdiction rests on the facts that exist at the time of removal,[40] not on the sufficiency of the jurisdictional allegations contained in the notice of removal. The Court may consider the jurisdictional allegations in the amended Notice of Removal to determine whether diversity jurisdiction existed at the time of removal. Defendants are permitted to freely amend the notice of removal prior to the expiration of the thirty-day period for removal.[41] Plaintiffs filed the state court petition on January 22, 2019 and served Defendants on that same day.[42] Defendants filed their amended Notice of Removal on January 28, 2019,[43] well within that thirty-day period. Even after the expiration of the thirty-day period for removal, a defendant may amend the notice of removal to cure technical defects in jurisdictional allegations.[44] Because the citizenship of Plaintiffs is diverse from that of Defendant Goodell, the Court finds minimal diversity of citizenship exists.

### D. Amount in Controversy

For this court to exercise diversity subject matter jurisdiction under CAFA, the aggregate amount in controversy must exceed $5,000,000.[45] In their state court petition, Plaintiffs seek damages for the following enumerated injuries:

(a) Past present, and future mental anguish and emotional trauma;

---

[39] R. Doc. 18 at 2.
[40] *Moss v. Princip*, No. 16-10605, 2019 WL 211214, at *3 (5th Cir. Jan. 16, 2019).
[41] *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162 (5th Cir. 1989), citing WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3733 at 537 (2d ed. 1985).
[42] R. Doc. 1-1 at 2-5.
[43] R. Doc. 19.
[44] 28 U.S.C. § 1653.
[45] 28 U.S.C. § 1332(d).

8

      (b) Past present, and future loss of faith in the NFL;
      (c) Past present, and future loss of enjoyment of life;
      (d) Present and future loss of entertainment;
      (e) Distrust of the game which has become a national pastime;
      (g) [sic] Other damages itemized at the trial of this matter.[46]

Defendants assert the amount in controversy exceeds $5,000,000.[47] The Court is permitted to make common-sense inferences about the amount in controversy.[48] For example, in *Allen v. R&H Oil & Gas Co.*, the district court inferred that hundreds of plaintiffs seeking punitive damages for a wide variety of harms allegedly caused by wanton and reckless conduct would satisfy the amount in controversy.[49] The Fifth Circuit affirmed this common-sense determination.[50] Although Defendants have not alleged the number of New Orleans Saints season ticketholders, it is reasonable for the court to infer there are at least 60,000 season ticketholders. The claims of these 60,000 season ticketholders, claiming only $100 in damages each, would exceed the $5,000,000 threshold.[51] As a result, the Court finds the amount in controversy is satisfied.

The Court notes that, *after* Defendants filed their Notice of Removal, Plaintiffs filed an affidavit executed by Plaintiff Tommy Badeaux averring he is not requesting monetary damages.[52] Based on the affidavit, Plaintiffs argue the amount in controversy is not satisfied because Plaintiffs seek only a writ of mandamus and do not seek monetary damages.[53] Post-removal affidavits regarding the amount in controversy may be

---

[46] R. Doc. 1-1 at 5, ¶ 11.
[47] R. Doc. 1 at 4.
[48] *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015).
[49] *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995).
[50] *Id.*
[51] Plaintiffs complain of "monetary loss for ticket holders" but do not include this injury in the itemized list of damages in paragraph nine of their petition. R. Doc. 1-1 at 4-5, ¶¶ 8, 11. If this is a category of the damages Plaintiffs claim, this category also would exceed the $5,000,000 threshold. R. Doc. 1-2 at 2-3, ¶ 2.
[52] R. Doc. 11-1 at 2.
[53] R. Doc. 24 at 4-5.

considered only when the basis for jurisdiction is ambiguous at the time of removal.[54] When it is facially apparent from the state court petition that the amount in controversy is satisfied at the time of removal, "post-removal affidavits, stipulations, and amendments reducing the amount do not deprive the district court of jurisdiction."[55] It is clear from the face of Plaintiffs' state court petition that they bring a class action and request monetary damages exceeding the $5,000,000 aggregate threshold. As a result, this Court will not consider the post-removal affidavit signed by Plaintiff when determining whether it has jurisdiction.

Even if the Court could consider the Tommy Badeaux affidavit, it would not affect the amount in controversy as the purported class has not been certified. A pre-class certification stipulation by a class representative that the amount in controversy does not exceed $5,000,000 will not divest a federal court of CAFA jurisdiction because the affidavit is not binding on the absent class members but only on the affiant himself.[56] Tommy Badeaux's post-removal affidavit does not reduce the amount in controversy.

Because Plaintiffs bring a "class action," in which the class exceeds one hundred, minimal diversity exists, and the amount in controversy exceeds $5,000,000, this Court has diversity subject matter jurisdiction over this case pursuant to CAFA.[57] The Motion to Remand[58] filed by Plaintiffs is denied.

---

[54] *Standard Fire Ins. Co*, 568 U.S. at 593 (finding post-removal affidavit stipulating that plaintiff would not seek damages for the class in excess of $5 million did not deprive the court of jurisdiction under CAFA).
[55] *Gebbia*, 233 F.3d at 883.
[56] *Standard Fire Ins. Co.*, 568 U.S. at 593.
[57] 28 U.S.C. § 1332(d).
[58] R. Doc. 24.

## II. Plaintiffs' Right to a Writ of Mandamus

Plaintiffs' second prayer in the state court petition is "that a writ of mandamus be ordered by this Court."[59] It is clear the Plaintiffs seek a writ directed to Defendant Goodell. It is unclear what action Plaintiffs seek to compel him to do. The rule to show cause issued by the state court, presumably drafted by Plaintiffs, ordered Defendants to show cause why that court should not issue a writ of mandamus "compelling Roger Goodell, commissioner of National Football League, to implement Rule 17, Section 2, Article 1 and 3, wherein the commissioners powers under this section 2 include . . . the reversal of the game's result or the rescheduling of a game either from the beginning or from the point of which the extraordinary act occurred."[60] At the hearing held January 28, 2019, Plaintiffs stated they seek a writ of mandamus to be issued to Defendant Goodell to compel him to conduct a full investigation of the incidents in the final two minutes of the January 20, 2019 National Football Conference championship game, which Plaintiffs believe the commissioner is required to do pursuant to NFL Rule 17.[61] In their Motion to Remand, Plaintiffs explain that their state court petition "sought to compel NFL Commissioner Roger Goodell to follow the NFL Rules."[62] After considering all of Plaintiffs' pleadings and arguments, the object of the writ of mandamus remains unclear. Fortunately, the precise nature of the action Plaintiffs seek to compel Defendant Goodell to do is not material to the Court's decision.

It is well established that the writ of mandamus is an *extraordinary* remedy which is to be used only sparingly.[63] The Louisiana Supreme Court has explained, "[t]he writ of

---

[59] R. Doc. 1-1 at 5, ¶ 11.
[60] R. Doc. 1-1 at 4, ¶ 8; R. Doc. 1-1 at 9.
[61] R. Doc. 27 at 26.
[62] R. Doc. 24-1 at 7.
[63] *Hoag v. State*, 2004-0857, p. 6 (La. 12/1/04); 889 So. 2d 1019, 1023.

11

mandamus is the most arbitrary of all the forms of judicial authority which is exercised. It shuts out the right of trial by jury. It substitutes for the ordinary and cautious mode of judicial proceeding an extremely harsh and summary one. The [Louisiana] Code characterizes it as an extraordinary remedy; and it is subjected to close limitations."[64]

Louisiana Code of Civil Procedure articles 3861 and 3864 describe the particular persons and entities to whom the writ of mandamus may be issued and the kinds of actions the writ of mandamus may compel.[65] Louisiana Code of Civil Procedure article 3862 provides, "[a] writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice." Even if article 3862 is interpreted to cover certain situations not explicitly provided for in articles 3861 and 3864, it would not apply in this case.[66] This is not a case in which the law provides no relief or where the delay in obtaining relief may cause injustice. Instead, the law provides Plaintiffs a right to relief without unjust delay in the form of an injunction or temporary restraining order. Like a writ of mandamus, an injunction or temporary restraining order is a summary proceeding heard on an expedited basis.[67] At the hearing regarding Plaintiffs' right to a writ of mandamus, counsel for Plaintiffs admitted the Plaintiffs did not seek injunctive relief because they did not want to post a bond.[68] The writ of mandamus may not be used to "bypass the furnishing of

---

[64] *State ex rel. Arbour v. Bd. of Managers of Presbyterian Hosp. of New Orleans*, 59 So. 108, 108 (La. 1912).
[65] Louisiana Code of Civil Procedure articles 3861 and 3863 also authorize the writ to be issued to a public officer. The parties agree no relief against a public officer is sought in this case. R. Doc. 27 at 21-22.
[66] *Mares v. La. Wild Life & Fisheries Comm'n*, 236 So. 2d 650, 654 (La. Ct. App. 1970).
[67] LA. CODE. CIV. P. arts. 2592, 3601-3613.
[68] R. Doc. 27 at 21.

12

security required in connection with the issuance of a temporary restraining order or a preliminary injunction."[69]

A writ of mandamus may not be directed to Defendant Goodell. Louisiana Code of Civil Procedure articles 3861 and 3864 authorize the writ of mandamus be directed only to a *corporation or officer thereof* or a *limited liability company or a member or manager thereof*. Commissioner Goodell is not a corporation or an officer of a corporation. Commissioner Goodell is not a limited liability company or a member or manager of a limited liability company.

Plaintiffs argue the NFL, an unincorporated association, should be treated as a corporation and the bylaws of the NFL confer upon the Commissioner the same powers as an officer of a corporation.[70] The Court's research revealed no case in which a Louisiana court issued a writ of mandamus to any entity or person not specifically listed in articles 3861 and 3864. The history of the Code of Civil Procedure articles governing the writ of mandamus also convinces the Court that the articles are meant to be strictly construed and not extended to cover any person or entity not specifically listed. Code articles authorizing Louisiana courts to issue writs of mandamus were first included in the Code of Practice of 1825.[71] As originally enacted, the articles allowed Louisiana courts to issue writs of mandamus "to an individual or corporation . . . directing it to perform some certain act belonging to the place, duty, or quality with which it is clothed."[72] The Code specified that writs of mandamus could be directed to corporations

> (1) To compel them to make elections and perform the other duties required by their charter: [and]

---

[69] *Craig v. Int'l Tri-D Corp.*, 338 So. 2d 952, 954 (La. Ct. App. 4 Cir. 1976).
[70] R. Doc. 18 at 3-4.
[71] LA. CODE PRAC. arts. 829–36 (1825); *see also* Shael Herman, *The Code of Practice of 1825: The Adaptation of Common Law Institutions*, 24 Tul. Eur. & Civ. L.F. 207, 217–20 (2009).
[72] LA. CODE PRAC. art. 829 (1825).

13

(2) To compel them to receive or restore to their functions such of their members as they shall have refused to receive, although legally chosen, or whom they shall have removed without sufficient cause.[73]

Early Louisiana courts granted writs of mandamus to compel *corporations* to comply with their duties under their corporate charters or under Louisiana law.[74] They did not grant writs of mandamus in cases in which the plaintiffs could not establish a legal right to the remedy.[75]

The Louisiana Code of Practice articles governing mandamus were amended and incorporated into the Louisiana Code of Civil Procedure in 1960.[76] Amended article 3864 retained the requirement that writs of mandamus issue only against corporations or a corporate officer and only to enforce duties and rights prescribed by law or by corporate bylaws.[77] Not until 2017 was the article amended to permit writs of mandamus against limited liability companies and their members or managers.[78] The legislative history of the articles shows the Louisiana legislature has intentionally limited the writ of mandamus. If the legislature had intended to extend the applicability of the writ to unincorporated associations, it would have done so in 2017. Given that mandamus is "subjected to close limitations," and articles 3861 and 3864 do not include an unincorporated association, the Court will not adopt the expansive and unprecedented interpretation of Louisiana law urged by Plaintiffs.

---

[73] LA. CODE PRAC. art. 835 (1825).
[74] *See e.g.*, *Prieur v. President & Dirs. of Commercial Bank of New Orleans*, 7 La. 509 (1835) (affirming grant of writ of mandamus for plaintiff directors seeking to vote to fill a vacancy in the board of directors).
[75] *See, e.g.*, *State ex rel. Hiern v. St. Paul*, 104 La. 280 (1900) ("Mandamus issues to compel an officer to do an act, and will not issue after an act has been done and has become an accomplished fact."); *Hatch v. City Bank of New Orleans*, 1 Rob. (LA) 470 (La. 1842) (reversing grant of writ of mandamus for plaintiff shareholders because the right asserted was not established by the charter or by law).
[76] LA. CODE CIV. P. art 3862, official revision comments—1960.
[77] LA. CODE CIV. P. art 3864 (1960).
[78] LA. CODE CIV. P. art 3864 (2017)

Plaintiffs do not have the right to seek a writ of mandamus.[79] The Louisiana Supreme Court held in *State ex rel. Arbour v. Board of Managers of Presbyterian Hospital of New Orleans* that only members or managers of the non-profit corporation may seek a writ of mandamus.[80] In that case, a student sought to compel a hospital to reinstate her in its training school for nurses. The Louisiana Supreme Court interpreted the mandamus remedy strictly and declined to issue the writ to reinstate the student because she was not a member or manager of the non-profit corporation.[81] Similarly, in *State ex rel. Cotonio v. Louisiana Bar Association*, the Louisiana Supreme Court denied the request of a non-member of the Louisiana Bar Association, a non-profit corporation, for a writ of mandamus.[82] in this case, Plaintiffs and the purported class members they represent are not members of the NFL, an unincorporated association, and they are not members or managers of NFL Properties, LLC.

None of the actions Plaintiffs might seek to compel Commissioner Goodell to do are the kinds of actions a writ of mandamus may address. Louisiana Code of Civil Procedure article 3864 authorizes a writ of mandamus be directed to compel performance of a ministerial duty;"[83] such as the holding of an election or the performance of other duties required by bylaws, articles of organization, or operating agreement or as prescribed by law; or to compel the recognition of the rights of the shareholders or members. For example, Courts have issued a writ of mandamus to compel a corporation

---

[79] In *Brennan v. Brennan*, 945 F.Supp.2d 704, *rev'd on other grounds*, 548 F. App'x. 264 (5th Cir. 2013), this court held the Plaintiffs in intervention could request a writ of mandamus because they alleged they were shareholders and sought recognition of their rights as such. In the present case, neither the Plaintiffs nor the members of the purported class claim to be shareholders or members or managers of the NFL or NFL Properties, LLC.
[80] *State ex rel. Arbour*, 59 So. at 108.
[81] *Id.* at 109.
[82] *State ex rel. Cotonio v. La. Bar Ass'n*, 36 So. 50, 51 (La. 1904).
[83] *Hiers v. DuFreche*, 2012-1132, (La. App. 1 Cir. 10/24/13); 2013 WL 8445626, at *4.

to transfer stock[84] or issue a stock certificate,[85] to compel a corporation to hold regular meetings required by its charter,[86] to compel a corporation to permit a shareholder to examine the corporate books,[87] to compel a corporation to provide an annual report,[88] or to compel a corporation to provide information upon a shareholder's written request.[89] In all of those cases, the corporation was required by law, bylaws, or articles of incorporation to so act, and the writ issued to compel the corporation to enforce the rights of shareholders.

It is clear that the writ of mandamus may be used only to compel the performance of some unequivocal duty imposed by law.[90] "[M]andamus is to be used only when there is a clear and specific legal right to be enforced or a duty which ought to be performed; it never issues in doubtful cases.[91] The writ of mandamus may not be used to enforce a disputed right.[92] The writ of mandamus is not appropriate to "exercise visitorial powers over . . . associations or their proceedings, except to prevent the violation of some law of the state or to protect or enforce some right already acquired."[93]

---

[84] *State ex rel. Pope v. Bunkie Coca Cola Bottling Co.*, 63 So. 2d 13 (La. 1953).
[85] *Volker v. Crescent City Wholesale Florist*, 17 So. 2d 372 (La. 1944).
[86] *Alexis v. Coker*, 35 So.2d 907 (La. Ct. App. 1948).
[87] *State ex rel. Carey v. Dalgarn Constr. Co.*, 122 So. 884 (La. Ct. App. 1929).
[88] *Tichenor v. Dr. G.H. Tichenor Co.*, 161 So. 198 (La. Ct. App. 1935).
[89] *Burguieres v. J. M. Burguieres Co.*, 312 So. 2d 179, 180 (La. Ct. App. 1975).
[90] *State ex rel. Arbour*, 59 So. at 109 ("Ordinarily, a writ of mandamus will issue to compel the performance of some unequivocal duty imposed by law."); *Baldone v. Terrebonne Par. Registrar of Voters*, 2015-1356, pp. 5-6 (La. App. 1 Cir. 9/21/15); 182 So. 3d 1005, 1008 (finding because there is no clear and specific right to register to vote under two different parties, the district court did not err in declining to issue a writ of mandamus to order the Registrar to comply with Plaintiff's wishes to register as both Republican and Democrat).
[91] *Wiginton v. Tangipahoa Par. Council*, 2000-1319, p. 4 (La. App. 1 Cir. 6/29/01); 790 So. 2d 160, 163.
[92] *State ex rel. Boykin v. Hope Producing Co.*, 167 So. 506, 509 (La. Ct. App. 1936).
[93] *State ex rel. Cotonio*, 36 So. at 51 (declining writ of mandamus to compel Louisiana State Bar Association to admit an applicant because the question of whether the committee of the association, in reporting unfavorably on the applicant, had acted irregularly, should be determined by the association); *see also State ex rel. Cotonio v. Louisiana Bar Ass'n*, 36 So. 241, 241 (La. 1904) (Provosty, J., concurring) ("The defendant is a mere voluntary association of lawyers, and relator is a mere outsider to it. Between him and it there has been no relation, contractual or other, such as could create a vinculum juris—give birth to a right of action.").

Plaintiffs belatedly assert they are entitled to pursue the issuance of a writ of mandamus based on their contractual rights as season ticketholders.[94] This cause of action is not included in Plaintiffs' state court petition beyond the assertion that, as a direct result of the incident, Plaintiffs have suffered "monetary loss for ticket holders."[95] Even if the Court interprets this allegation as asserting a cause of action for breach of the contractual rights of season ticketholders, mandamus relief would not be available. A writ of mandamus may not be used to compel performance of contractual rights and obligations.[96]

Accordingly;

**IT IS ORDERED** that the Motion to Remand[97] filed by Plaintiffs is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' request for the issuance of a writ of mandamus directed to Defendant Goodell is **DENIED.**

**New Orleans, Louisiana, this 31st day of January, 2019.**

                *Susie Morgan*
                **SUSIE MORGAN**
        **UNITED STATES DISTRICT JUDGE**

---

[94] R. Doc. 11.
[95] R. Doc. 1-1 at 4, ¶ 8.
[96] *Hebert v. Abbey Healthcare Grp., Inc.*, 94-1280, p. 4 (La. App. 3 Cir. 5/17/95); 657 So. 2d 278, 281; *State ex rel. Arbour*, 59 So. at 108.
[97] R. Doc. 24.